**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **GEORGIA L. KRUEGER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | |
| | ) | |
| **MICHAEL J. ASTRUE, Commissioner,** | ) | |
| **Social Security Administration,** | ) | **Case No. 07-CV-198-PJC** |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

Claimant, Georgia Louise Krueger ("Krueger"), pursuant to 42 U.S.C. § 405(g), requests

judicial review of the decision of the Commissioner of the Social Security Administration

("Commissioner") denying claimant's application for disability benefits under the Social

Security Act.  In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to

proceed before a United States Magistrate Judge.  Any appeal of this order will be directly to the

Tenth Circuit Court of Appeals.  Claimant appeals the decision of the Administrative Law Judge

("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that

claimant was not disabled.  For the reasons discussed below, the Court AFFIRMS the

Commissioner's decision.

### Claimant's Background

Krueger was born on August 6, 1953 and was 53 at the time of the ALJ's decision dated

August 8, 2006. (R. 12, 45).  Krueger attended high school through the eleventh grade and

completed a manicuring course but "did not work too much in that area." (R. 69, 219, 240).

Krueger worked as a bailiff, telemarketer, and store clerk within the past fifteen years. (R. 64).

On her initial application filed November 14, 2003, Krueger stated she became unable to work on April 18, 2003,[1] and she had been receiving Workers' Compensation benefits which ended October 12, 2003.  (R. 45).  Krueger stated she became unable to work in April 2003 when she injured her knee and was terminated October 12, 2003, because the employer was not able to accommodate her restrictions. (R. 79)

In her application for disability, Krueger claimed she could not work because of chronic anxiety, pain (back, neck, knee, left shoulder, left foot), sore throat, burning red eyes , chronic diarrhea, irritable bowel syndrome ("IBS"),  memory problems, headaches, stress and depression. (R. 63, 88, 94-95).  Krueger indicated she took Xanax (and its generic, Alprazolam) since 1987 for anxiety, depression, and insomnia, Buspar for anxiety, and Lortab and Vioxx for pain.  (R. 68, 95, 119, 163, 204).

Krueger's primary care physician was Dr. Susan Hakel, and her medical records date back to May of 2000.  (R. 150).  Krueger received Xanax from Dr. Hakel for her anxiety and depression.  (R. 138-150).  In August of 2001, Dr. Hakel noted respiratory problems Krueger was experiencing due to an exposure to toxic mold at her home.  (R. 147).  Krueger had trouble with a sore throat, sneezing, congestion, and skin irritations because of the mold exposure. *Id*. The symptoms persisted into January of 2002.  (R. 143).  Her IBS was discussed in relation to her general health, and Dr. Hakel recommended Krueger for a colonoscopy.  *Id*.  At this January 2002 appointment, Krueger also complained of a dull sore aching in her left arm, tight soreness on the right side of her neck and chronic wrist problems.  *Id*.  Dr. Hakel noted these symptoms

---

[1]     Krueger has stated she became unable to work on various dates in April 2003, i.e. the 12th, the 15th the 18th.  (R. 45, 63, 80).  The recommended onset date is April 15, 2003. (R. 79)

were characteristic of arthritis, despite the lack of physical findings on Krueger's exam.  *Id*.

On July 17, 2002, Krueger was injured while working for Big Lots, Inc.  (R. 124, 126).

She tripped on a wooden pallet and fell, injuring her left knee and neck in the fall.  (R. 124).

Krueger was off work for approximately four months before she returned to work on light duty

with a twenty-pound weight lifting restriction.  *Id*.

On January 29, 2003, she was seen by Dr. James Odor for evaluation of her neck

complaints for Workers' Compensation.  *Id*.  Dr. Odor noted that she was under treatment for her

left knee by Dr. Harvey Jenkins.   At that time, Dr. Odor found Krueger had cervical

radiculopathy that was unresponsive to the conservative care (physical therapy and medication)

being given and recommended further diagnostic evaluation with a MRI of the cervical spine.

(R.125).  Dr. Odor stated his opinion that Krueger was not temporarily totally disabled, but could

do light duty work with "no repetitive bending, twisting, or lifting greater than ten pounds."  *Id*.

On March 26, 2003, Dr. Odor discussed the results of the cervical MRI with Krueger which

showed cervical disk disease, and he placed Krueger on Vioxx.  (R. 122).  On April 9, 2003,

Krueger reported to Dr. Odor she was doing much better on Vioxx, still needed one Lortab a day,

but "she was able to work" and was back to work full duty.  (R. 121).   Dr. Odor found Krueger

"can work full duty" with a restriction for no overhead lifting.  *Id*.

On April 24, 2003, Krueger visited Dr. Calvin Johnson for a medical exam regarding her

left knee.  (R. 135).  She had been seen previously by Dr. Jenkins who prescribed Naprosyn and

Flexeril and ordered physical therapy and two cortisone injections.  *Id*.  She was subsequently

seen by two other doctors for her knee, but had continued pain, difficulty with range of motion,

swelling, and difficulty standing for long periods of time.  *Id*.  Dr. Johnson's diagnosis was patella

3

femoral contusion and patellar malalignment.  *Id*.  An MRI was scheduled and she was given Lortab and Vioxx for her knee.  *Id*.  Dr. Johnson allowed Krueger to return to light work, but modified to preclude crawling, kneeling, squatting, or climbing.  *Id*.

The MRI of Krueger's knee on May 12, 2003 revealed a posterior horn tear of her medial meniscus.  (R. 134, 136A).  Krueger underwent arthroscopic surgery on July 2, 2003 for a partial medial meniscectomy and chondroplasty of the patella. (R. 136).  Krueger's follow up on July 11, 2003 indicated she was recovering, was taking Lortab and Vioxx, and had begun her physical therapy.  (R. 133).  Her left knee range of motion ("ROM") was now 0 to 100 degrees.  *Id*.  She was given temporary restrictions of restricted walking and standing, and no crawling, kneeling, squatting, or climbing.  *Id*.  Dr. Johnson determined she could return to work on July 28, 2003, but could only perform sit down work.  *Id*.

On July 14, 2003, Krueger returned to Dr. Odor and reported she was feeling well from a neck standpoint.  (R. 120)  Dr. Odor noted her recent knee surgery, found she had reached maximum medical improvement of her neck complaints and released her from further care to go back to work with no restrictions regarding her neck.  *Id*.

On Aug. 28, 2003, Krueger was seen for her knee again by Dr. Johnson and found to have an increase in ROM to 130 degrees and good patellar mobility.  (R. 132).  Dr. Johnson gave her additional exercises to include in her daily home exercise program.  *Id*.  She was given permanent restrictions of lifting no more than forty pounds, no knee flexion beyond 90 degrees, and limited crawling, kneeling and squatting.  *Id*.  At that time, Dr. Johnson stated Krueger had reached maximum medical improvement and released her from his care.  *Id*.

On November 07, 2003, Krueger was seen by Dr. Hakel for tingling in her left leg and foot,

4

which Krueger attributed as just residual from her disc disease developed in her neck from her fall

at Big Lots.  (R. 138).  Krueger also complained of pain in her head and neck and sinus

congestion.  *Id*.  At that time, Dr. Hakel noted Krueger had been released by Dr. Johnson

regarding the left knee, and he would not give Krueger any more pain medicine or continue to treat

her for her neck problems.  *Id*.  Dr. Hakel instructed Krueger to perform neck and back exercises

to help alleviate her symptoms and prescribed Vioxx for pain. *Id*.

Krueger saw Dr. Raczkowski on June 11, 2003, for her diarrhea.  (R. 140).  He performed a

colonoscopy on Krueger and the results were normal, as were the random biopsies.  (R. 139).

This examination ruled out any microscopic colitis.  *Id*.  The record indicated Krueger had a

previous colonoscopy in 1988 with Dr. Welch and a follow up in 1992 with Dr. Robinson, when

she was told she had IBS.  (R.140).  Krueger had a history of colon polyps and had one removed in

1991.  (R. 140, 143).  Dr. Raczkowski noted Krueger continued to have episodes of urgency and

diarrhea after ingesting fatty foods. (R. 140).  He prescribed Robinul to control her diarrhea. (R.

139).

Krueger had a medical consultative exam performed by Dr. Derrick Freeman on January

20, 2004.  (R. 163).  Krueger had no scoliosis, joint edema, joint effusion, or swelling.  (R. 165).

At this same examination, Krueger reported having problems with pain in her neck, back, hip, left

knee, and problems with anxiety.  (R. 163).  Dr. Freeman found Krueger had mild crepitus of the

knees bilateral, but her knees had a smooth range of motion in a seated position. (R. 165).

Although Krueger complained of decreased sensation in the C-8 distribution of her forearm,

Freeman noted no muscle weakness with wrist flexion or wrist extension.  *Id*.  It was noted

Krueger's back extension range of joint motion was 25 degrees, the maximum, and her back

flexion range of joint motion was 75 degrees out of 90. (R. 167). Her neck was a 50 out of a 60 on

extension range of motion and 50 out of 50 on neck flexion range of joint motion.  *Id*.  Krueger

showed decreased range of motion in her left hip extension (20 out of 30) and both her left and

right knee flexion (130 and 140 out of 150 respectively).  *Id*.  As a result of his findings, Dr.

Freeman determined the impairments were nonsevere.  (R. 170).

Dr. Carolyn Goodrich performed a Psychiatric Review Technique ("PRT") on Feb. 19,

2004.  (R. 171-83).  Dr. Goodrich found Krueger had anxiety, but that it did not meet the

diagnostic criteria for a category 12.06 anxiety-related disorder - the only category addressed in

the PRT.  (R. 171, 176).  Dr. Goodrich listed Krueger's impairment as mildly affecting her

activities of daily living and difficulties in maintaining social functioning, but found there was

insufficient evidence to establish whether there was difficulty in maintaining concentration,

persistence, pace, or decompensation. (R. 181).

Patricia J. Allison, D.O., gave Krueger a prognosis of "fairly good" after psychological

consultative examination on Nov. 29, 2004.  (R. 186).  Krueger drove herself to the exam and her

observed gait was unremarkable.  (R. 185).  At the exam, Krueger complained of wanting to cry all

the time since the suicide of her husband in January of 2004.  *Id*.  Krueger denied any limitation

pertaining to caring for herself or doing household chores.  *Id*.  Krueger was attending church and

visiting with her adult son 3-4 times per week.  *Id*.  Krueger stated her "memory problems"

prevented her from working in addition to the fact Krueger could not "do the physical work any

longer."  *Id*.  Dr. Allison observed no evidence of anxiety during the examination.  (R. 186).  Dr.

Allison presented Krueger with several mental exercises.  Krueger was able to name the current

and one previous president, spell "WORLD" correctly forward and back, perform serial 7's,

6

perform serial 3's without difficulty, and recall 3 of 3 objects in five minutes.  *Id*.  Krueger's abstracting ability was good, her insight and judgment were unimpaired, and based upon vocabulary and syntax, her intelligence was estimated to be above average.  *Id*.  Krueger denied any suicidal ideation, hallucinations, delusions, or mania.  *Id*.  Krueger had coherent and goal-oriented speech and unremarkable psychomotor activity.  *Id*.  Dr. Allison determined that Krueger's psychiatric condition "does not appear likely to deteriorate, and most likely would improve significantly if she were to seek treatment for her depression symptoms."  *Id*.  Dr. Allison noted Krueger was not taking antidepressant medication, had no prior episodes of mood disorder or substance abuse, had worked for 10 years in one job, and only reported mild social isolation due to her concern about having an episode of diarrhea due to her IBS.  *Id*.

On Dec. 21, 2004, Dr. C.M. Kampschaffer performed another PRT addressing only the Listing 12.04 Affective Disorder.  (R. 190-203).  Dr. Kampschaffer determined Krueger had a moderate, single episode of major depressive disorder, but this impairment did not satisfy the diagnostic criteria for affective disorders found in Listing 12.04.  (R. 190, 193).   Dr. Kampschaffer listed no functional limitations regarding restriction of activities of daily living, no difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence, or pace and no episodes of decompensation.  (R. 200).  This moderate single episode of major depressive disorder was not a severe impairment.  (R. 190).

During 2005, Dr. Hakel treated Krueger a number of times for varying complaints: IBS, anxiety, depression, headaches, stiffness in her neck, complications due to menopause and poor sleep. (R. 227-230).  On February 4, 2005, Dr. Hakel reported Krueger complained of severe depression and could only sleep by taking Xanax. (R. 231). Krueger also complained of IBS and

back pain.  *Id*.  Dr. Hakel saw Krueger again on July 18, 2005, where Krueger complained of an

inability to relax and a desire to "cry all of the time." (R. 229). At that time, she was working at

her son's restaurant with flexible hours and without having to do heavy lifting.  *Id*.  Dr. Hakel

again saw Krueger for anxiety and depression on Oct. 25, 2005. (R. 227).   Krueger complained of

stiffness in her neck, headaches, and poor sleep.  *Id*.  The neck injury was caused by the fall in Big

Lots in 2002.  *Id*.  Dr. Hakel reported that Krueger had "very limited range of motion to lateral

flexion, only about 20-30 degrees each side and the Spurling sign is actually weakly positive on

the right, although it only exacerbates the neck pain and does not radiate down the arm."  *Id*.

Krueger was directed to exercise 20 to 25 minutes a day in her apartment complex's gym and

prescribed Lexapro to start immediately.  *Id*.   Dr. Hakel stated this course of treatment should

improve Krueger's overall functioning in terms of her anxiety and depression and noted that

Krueger was not given any new prescriptions specifically for pain.  *Id*.

On February 24, 2006,  E. Joseph Sutton, II, D.O., performed an internal medicine

consulting examination on Krueger. (R. 204-217).  Dr. Sutton noted that Krueger was alleging

disability on the basis of IBS.  (R. 204)  Dr. Sutton also noted Krueger reported having "some

vague complaints of joint pain in her wrists, left arm and foot." (R. 205)  Dr. Sutton's examination

of Krueger's extremities revealed that Krueger's range of motion was normal, and there was no

evidence of edema or clubbing.  (R. 206).  Dr. Sutton reported Krueger displayed normal grip

strength and normal fine motor coordination by her ability to operate the buttons on her jeans.  *Id*.

Krueger's gait was normal in addition to her heel-walking and toe-walking.  *Id*.  Reflexes were 2+

bilaterally in the upper and lower extremities.  *Id*.  Straight leg raising test in the sitting and supine

positions were negative.  *Id*.  Dr. Sutton determined Krueger could sit for four hours or stand and

walk for two hours; furthermore, Krueger could sit, stand, and walk for eight hours during an eight-hour work day. *Id*. Dr. Sutton determined Krueger could occasionally lift and carry 21 to 50 pounds, frequently lift and carry 11 to 20 pounds, and continuously lift and carry anything less than that; however, she was restricted from lifting more than 50 pounds. *Id*. She could use her feet for repetitive movements such as pushing and pulling leg controls and she is able to drive. *Id*. She could also use her hands for repetitive movements such as grasping and fingering and demonstrated normal function in these areas. *Id*. Dr. Sutton noted Krueger had very minimal complaints regarding her structural system and he noted no dysfunction during his examination of her. *Id*. Dr. Sutton concluded on the basis of the physical exam that "[t]here are no objective findings to support [her] claim" while noting that Krueger had seen a gastroenterologist and seemed to have a valid diagnosis and problem with IBS. (R. 207).

On March 7, 2006, Dr. Larry Vaught, Ph.D., conducted a psychological RFC on Krueger in connection with her application for disability. (R. 218-26). Dr. Vaught noted Krueger reported she had been taking Xanax since 1987 for fairly chronic anxiety. (R. 218). Krueger also reported some depression, primarily since her husband committed suicide in January of 2004. *Id.* She scored a 46 on the Beck Depression Inventory, "suggesting the possibility of moderate to severe depression." (R. 220). Dr. Vaught noted she reported some suicidal ideation, but would not follow through. *Id*. Krueger scored a 47 on the Beck Anxiety Inventory, "suggesting the possibility of moderate to severe anxiety." *Id*. Dr. Vaught found Krueger to be a somewhat reserved, tearful individual. (R. 221). The results of the MMPI-II suggested ruminative anxiety, depression and some persecutory ideation. *Id*. Dr. Vaught also found Krueger was fairly independent, noting she drove to the exam herself. *Id*. Krueger's concentration, persistence, and pace were within normal

limits. *Id*. Krueger was able to repeat seven digits forward and five backward. *Id*. Dr. Vaught found her short-term and remote memory appeared intact, as well as her calculations, abstraction, and basic judgment. *Id*. Dr. Vaught diagnosed Krueger with adjustment disorder with depressed mood, chronic anxiety disorder, and psychological factors affecting a physical condition (IBS). *Id*. Dr. Vaught found Krueger had moderate limitations in working in coordination with others, the ability to complete a normal workday without interruptions from psychologically-based symptoms, the ability to interact appropriately with the general public, and the ability to set realistic goals or make plans independently of others. (R. 223-24). Dr. Vaught concluded Krueger had a history of chronic anxiety that had worsened since her husband's death in 2004. (R. 225).

### Procedural History

On Nov. 14, 2003, Krueger filed an application for Title II (42 U.S.C. § 401 et seq.) disability insurance benefits alleging that she became unable to work on the amended onset date of April 15, 2003. (R. 45, 244).  On March 26, 2004, Krueger filed an application for disabled widow's benefits under Part A of Title XVIII of the Social Security Act as her husband died January 10, 2004.  (R. 233).  Krueger's application for disability benefits was initially denied on February 19, 2004, and on reconsideration on December 22, 2004.  (R. 34). A hearing was held on both claims before Administrative Law Judge ("ALJ") Richard J. Kallsnick, on June 21, 2006, in Tulsa, Oklahoma. (R. 238). By decision dated Aug. 8, 2006, the ALJ found that the claimant was not disabled at any time through the date of decision. (R.14). On Feb. 1, 2007, the Appeals Council denied review of the ALJ's decision. (R. 5). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. §423(d)(1)(A).  A claimant is disabled under the Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. § 416.920. [2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  *Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991).

Substantial evidence is such evidence "as a reasonable mind might accept as adequate to support a conclusion."  *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2002) (citation omitted). In reviewing the decision of the Commissioner, the court "may neither reweigh the evidence nor

---

[2]    Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 416.972. Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities.  *See* 20 C.F.R. § 416.920(c).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform.  *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001).  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 416.920.

substitute [its] judgment for that of the agency." *Id.* (citation omitted).  Nevertheless, the court

examines "the record as a whole, including whatever in the record fairly detracts from the weight

of the Secretary's decision and, on that basis, determines if the substantiality of the evidence test

has been met." *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir.

1991).

### Decision of the Administrative Law Judge

The ALJ made his decision at Step four of the sequential evaluation process. (R. 19). He

found that Krueger had the residual functional capacity (RFC) to perform past relevant work as a

cashier, receptionist, and bailiff with no accommodations.  *Id*.  Additionally, the ALJ found that

even if Krueger were unable to return to past work, pursuant to Step five, there were a number of

jobs in the regional and national economy that she would be able to perform given her limitations.

*Id*.  The ALJ found Krueger had the RFC "to frequently lift 20 pounds and occasionally lift 50

pounds.  She can stand/walk or sit for an entire 8-hour workday.  Bending, squatting, crawling, and

reaching can be done frequently."  (R. 16-17).  Considering Krueger's RFC, age, education and

work experience, the ALJ found that Krueger could perform work as a data entry clerk (6,500 jobs

in Oklahoma and 550,000 nationally), telephone answerer (4,000 in Oklahoma and 250,000

nationally), mail room clerk (3,600 in Oklahoma and 160,000 nationally), pricer/marker (3,000 in

Oklahoma and 200,000 nationally), order clerk (1,000 in Oklahoma and 90,000 nationally), and

labeler (700 in Oklahoma and 48,000 nationally). (R. 19-20). The ALJ concluded that Krueger was

not disabled under the Social Security Act from April 15, 2003 through the date of the decision,

August 8, 2006.  (R. 20).

### Review

Krueger asserts three errors on appeal: The ALJ failed to perform a proper evaluation at Step 3 of the sequential evaluation process; the ALJ failed to perform a proper credibility determination; and the ALJ failed to perform a proper determination at Steps 4 and 5 of the sequential evaluation process.

## I.      Step 3 determination.

Krueger contends that the ALJ's Decision is fatally flawed at Step 3 because the ALJ failed to consider the impact of Krueger's depression and anxiety on her ability to function in the workplace, citing *Salazar v. Barnhart*, 486 F.3d 615, 621 (10th Cir. 2006) and *Cameron v. Halter*, 6 Fed. Appx. 823 (10th Cir. 2001) (unpublished).  Krueger is correct that the ALJ's Decision patently does not in any way refer to Krueger's "depression/anxiety," found to be severe at Step 2, in his Step 3 analysis.  Instead the ALJ's Decision states the conclusion that the claimant does not have an impairment or combination that meets a listing, with then two brief sentences stating that Listing 1.02 is the pertinent listing and that Krueger does not meet its requirement of "an inability to ambulate effectively."  (R. 16). At Step 3, the Decision does not mention Krueger's depression and anxiety.  It is error, at Step 3, when an ALJ does not explain the evidence or the reasoning for determining that a claimant is not disabled at this stage.  *Clifton v. Chater*, 79 F.3d 1007, 1008-09 (10th Cir. 1996).

The present case, however, falls directly within *Fischer-Ross v. Barnhart*, 431 F.3d 729 (10th Cir. 2005).  In *Fischer-Ross*, the Tenth Circuit discussed the requirements of *Clifton* and the rules for determination of disability at some length.  The ALJ in *Fischer-Ross* had failed to include any facts or analysis in Step 3, but had only included the statement that "a review of the medical evidence fails to reveal the existence of an impairment or combination of impairments which

specifically meets or equals the criteria" of any listing.  *Fischer-Ross*, 431 F.3d at 731-32.  The district court held that this was reversible error because the court could not adequately review the bare conclusion.  The district court went on, however, to uphold the ALJ's determination at Steps 4 and 5 that the claimant's RFC allowed her to perform a significant number of occupations.  *Id.* at 732.  The district court remanded so that the ALJ could provide a "sufficiently explicit rejection of Claimant's disability claim at step three," and that in that case, the ALJ's conclusion would be affirmed because the district court had already found that the ALJ's analysis at Steps 4 and 5 was supported by substantial evidence.  *Id.* at 732-33.

On appeal to the Tenth Circuit, the claimant in *Fischer-Ross* did not address the substance of the Commissioner's argument that the ALJ's evaluation and specific findings at Steps 4 and 5 precluded a favorable ruling at Step 3, and instead argued that *Clifton* required remand because the ALJ's Step 3 discussion was "insufficiently detailed."  The Tenth Circuit rejected this *per se* rule, saying that it would lead "to purely formalistic remands unjustifiably prolonging administrative proceedings."  *Fischer-Ross*, 431 F.3d at 733.  Instead, the court agreed that:

> an ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment.

*Id.*  The court then turned to whether the ALJ's findings at Steps 4 and 5 justified his Step 3 conclusions, and found that the ALJ's specific findings at those steps contradicted a conclusion that the claimant's problems could meet the severity required to be conclusively presumed disabled under any of the pertinent listings.  *Id.* at 734-35.  The court therefore reversed the district court and affirmed the ALJ's administrative determination.  *Id.* at 735.

This Court will discuss under Krueger's third point of appeal the ALJ's detailed findings

and analysis under Steps 4 and 5.  Because the ALJ's analysis, including his discussion of

Krueger's depression and anxiety, are supported by substantial evidence at these steps in the

sequential process, there is no possibility that a reasonable fact finder could find that Krueger's

depression and anxiety met the severity level required by any listing.

Krueger urges that *Fischer-Ross* is not applicable and that this Court should instead rely

upon *Cameron v. Halter*, 6 Fed. Appx. 823 (10th Cir.  2001)(unpublished).   Krueger argues that

*Cameron* stands for the proposition that failure to consider a mental impairment until Step 4

improperly limits the analysis at Step 3.  The ALJ in *Cameron* apparently had failed to discuss

adequately the claimant's mental impairments both at Step 3 and at Step 4, and therefore *Cameron*

is not applicable to the present case, but instead the analysis of *Fischer-Ross* fully applies.

## II.      Credibility determination.

Credibility determinations by the trier of fact are given great deference.  *Hamilton v.*

*Secretary of Health & Human Services,* 961 F.2d 1495, 1499 (10th Cir. 1992).

> The ALJ enjoys an institutional advantage in making credibility determinations.  Not
> only does an ALJ see far more social security cases than do appellate judges, the ALJ
> is uniquely able to observe the demeanor and gauge the physical abilities of the
> claimant in a direct and unmediated fashion.

*White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2000).

The ALJ stated that he found Krueger's statements concerning the "intensity, persistence

and limiting effects" of Krueger's symptoms to be not entirely credible.  (R. 18).  The ALJ

contrasted Krueger's testimony regarding her knee pain with the findings contained in the report of

Dr. Sutton, a consulting examiner.  (R. 204-17).  Dr. Sutton's report is detailed and reflects Dr.

Sutton's conclusion that Krueger was capable of sitting, standing and walking for a full 8-hour

work day.  (R. 206).  The ALJ noted Krueger's failure to seek additional treatment for her IBS and

15

for her emotional issues.  (R. 19). The ALJ further notes that the report of Dr. Allison, another

consultative examiner, states that Krueger denied any limitations to daily activities, such as

cooking, laundry, or housework, and that Krueger reported only minimal problems with

concentration.  (R.  19, 185).  It was Dr. Allison's opinion that Krueger's ability to complete tasks

on time and appropriately was "unimpaired."  All of these specific evidentiary statements

constitute substantial evidence supporting the ALJ's finding regarding Krueger's credibility.

Krueger attacks the ALJ's reliance on Dr. Sutton's report, contending that the ALJ mis-

stated Dr. Sutton's findings and that Dr. Sutton's examination was incomplete.  *See* Pl.'s Br. at 3-

4.  Krueger asserts that the ALJ is incorrect because "the form completed by [Dr. Sutton] opined

that Claimant  could sit, stand, and walk for a total of  24 hours in each eight-hour workday."  (Pl.

Br. at 3).  Krueger here is making a specious argument based on Dr. Sutton circling "8" hours for

all three activities of sitting, standing, and walking, and Krueger is stretching common sense to

add them up to 24 hours.  Dr. Sutton's written report, as referenced above, obviously reflects that

he believed Krueger to be capable of any combination of sitting, standing, and walking for an 8-

hour day, and Krueger does herself a disservice in twisting the obvious meaning of the form

completed by Dr. Sutton.

Krueger also contends that Dr. Sutton's report should be disregarded as incomplete because

he did not perform "many" of the range of motion tests, circumferential limb measurements or leg

lengths, or test for sensory loss and therefore did not address deficiencies found in the first

physical CE performed two years earlier.   *See* Pl. Br. at 4.  In 2004, Krueger's complaints focused

on pain in her neck, back, hip and knee, and her anxiety. (R. 163)  In 2006, Krueger alleged

disability based on IBS and made only "vague complaints of joint pain" which were unsupported

by any physical findings.  (R. 204-206).   Krueger's criticism of the scope of Dr. Sutton's exam is unfounded and does not undermine the ALJ's credibility determination.

Krueger also criticizes the ALJ's finding that Krueger "complains of IBS but sees no doctor for it and takes no medication for it."  Pltf. Brf. at 4.  The ALJ's statement appears to be an elaboration on the statement in Dr. Sutton's report that Krueger "was on no treatment for IBS." (R. 19, 204).  Krueger stated at the hearing before the ALJ, that she and her medical doctors had "tried several medications, and we've tried the fibers and different kinds of fibers, and it doesn't really help."  (R. 248).  There is a similar statement in the medical record.  (R. 204).  Krueger does not list any current medications for IBS in her initial disability filing (R. 68) or in the medical histories that she gives any of the examining physicians, and the implication of her testimony at the hearing is that she is not seeking any additional treatment to alleviate her symptoms.  The ALJ's statement is not completely precise on this point, because Krueger certainly did see her primary care physician, Dr. Hakel, for IBS and had previously been treated with colonoscopy and polyp removal.  The imprecision of the ALJ's statement does not detract, however, from the point he is trying to make about Krueger's credibility, which is that her failure to continue to seek treatment and to try medications to alleviate her symptoms is one point against Krueger's credibility regarding the severity of these symptoms.  *See Bean v. Chater*, 77 F.3d 1210, at 1213-14 (10th Cir. 1995)(ALJ's factual error on one point did not create reversible error on credibility determination).

Krueger complains about the ALJ's statement that Krueger does not "get psychological or psychiatric treatment for her emotional problems."  (R. 19).  Pl. Brf. at 5.  Krueger took medications for her anxiety and depression that were prescribed by Dr. Hakel, her primary treating physician.  There is no indication that Krueger ever sought any kind of counseling, and therefore the ALJ's statement is correct, although Krueger complains that Dr. Allison stated that Krueger's condition "most likely would improve significantly if she were to seek treatment."  (R. 19, 186).  Whether this statement by Dr. Allison is "speculative" does not reduce the point the ALJ in this passage of the Decision appears to be making regarding Krueger's credibility: that Krueger's failure to seek psychological or psychiatric counseling weighs against her complaints regarding the severity of her condition.  The extensiveness of attempts to obtain relief is a legitimate factor for an ALJ to consider in determining credibility.  *Branum v. Barnhart*, 385 F.3d 1268, 1273-74 (10th Cir. 2004)(citation omitted).   The ALJ's credibility determination is supported by substantial evidence.

Krueger then asserts that there is affirmative evidence that the ALJ should have considered in determining her credibility.  This effort, however, does not demonstrate any material factual errors made by the ALJ.  Instead, this argument appears to ask this Court to re-weigh the evidence, and this Court will not do that.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) (declining to re-weigh evidence).  The ALJ was not required to recite a formal factor-by-factor analysis, so long as he set forth the specific evidence upon which he relied.   *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  The ALJ's discussion was adequate, and he considered appropriate factors; therefore, there was no error.  *See Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000);   *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004).

18

## III.     Step 4 and 5 determination.

Krueger's third asserted point of error, at Steps 4 and 5, relates to the hypotheticals posed

to the VE and the ALJ's finding that there are jobs Krueger can perform with her RFC.  Krueger

does not seem to be contesting the ALJ's RFC finding itself.  The Court concluded, above, that the

ALJ's analysis at Steps 4 and 5 is adequate, pursuant to *Fischer-Ross*, to contradict a conclusion

that Krueger's problems could meet the severity required to be conclusively presumed disabled

under Listing 12.04 for affective disorders.  *Fischer-Ross*, 431 F.3d at 734-35.   Therefore, the

Court will review the ALJ's RFC findings before addressing Krueger's claimed errors at Steps 4

and 5.

Krueger is not contesting the exertional limitations found by the ALJ in his RFC finding,

but is instead complaining of the nonexertional limitations relating to her depression and anxiety.

The ALJ discussed the medical evidence at some length.  (R. 17-19).   He ultimately concluded

that she had limitations on her ability to work:

> The undersigned is persuaded that the claimant's depression and anxiety would
> significantly affect her ability to engage in work related activities.  It is further
> concluded that the record establishes the claimant's depression and anxiety have
> resulted in mild restriction of activities of daily living, moderate difficulties in
> maintaining social functioning, mild deficiencies of concentration, persistence, or
> pace; and no episodes of deterioration or decompensation of extended duration.

(R. 18).  The ALJ's findings regarding the mental RFC are consistent with the findings of Drs.

Goodrich, Kampschaffer, Allison, and Vaught.  (R. 18-9, 181, 183, 185-6, 190, 200, 202, 222-25).

Listing 12.04 requires in its paragraph B criteria that the limitation of function for at least

two of the factors cited by the ALJ above be "marked."  Instead, the ALJ's RFC findings are in the

mild or moderate limitation of function, with no episodes of deterioration.  Because the RFC

finding precludes a determination that Krueger could have met Listing 12.04, this Court finds that

the ALJ's error at Step 3 to address Listing 12.04 was harmless error pursuant to *Fischer-Ross*.

Regarding Krueger's assertions relating to the VE, this Court flatly disagrees with the contention that the ALJ failed to include mental limitations in the hypothetical he posed to the VE. The transcript clearly reflects that the ALJ asked the VE to review relevant pages of the assessment of one of the consulting examiners, Dr. Vaught.  (R. 258, 222-25).   He asked the VE to assume, for purposes of the hypothetical, that the individual had the RFC presented in the relevant pages, and the VE indicated her understanding of the ALJ's request.

Krueger's main point is that the ALJ erred regarding the effect of Krueger's "moderate" limitation on her ability to interact appropriately with the general public, as found by Dr. Vaught. (R. 223).  The VE testified that this limitation did not preclude Krueger from being able to perform her previous work at Step 4 or several jobs at Step 5.  Krueger attaches several Dictionary of Occupational Titles ("DOT") descriptions of jobs, indicating that they require "dealing with people," and Krueger states that the VE was wrong, and inconsistent with the DOT, in testifying that Krueger maintained the ability to perform these jobs even with her moderate limitation described above.

This Court finds that a recent Tenth Circuit unpublished decision addresses Krueger's argument regarding the asserted conflict between the VE's testimony and the DOT.  In *Segovia v. Astrue*, 226 Fed. Appx. 801 (10th Cir. 2007), the claimant's RFC was limited to only occasional overhead reaching.  Two of the jobs that the ALJ found at Step 5 were within the claimant's RFC required frequent "reaching," and the *Selective Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993) ("SCO") included "overhead reaching" within the definition of "reaching."  *Segovia*, 226 Fed. Appx. at 804.  The VE had been aware of the

20

claimant's limitations when testifying that she could perform the two identified jobs and that his opinion of the jobs was consistent with the DOT's specifications.

> In these circumstances, the VE's testimony does not conflict with the DOT and SCO so much as it clarifies how their broad categorizations apply to this specific case.

*Id. (citing with approval Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000)).

The principle stated in *Segovia* was applied recently by the Western District of New York to a case dealing with the specific issue presented by Krueger of "dealing with people." *Lind v. Astrue*, 530 F. Supp. 456 (W.D.N.Y. 2008). In *Lind*, the ALJ's RFC required that the claimant have "little interaction with the public," but the VE testified that although some of the jobs might involve frequent contact with the public, the contact would be largely superficial, such as making change for people at a parking lot tollbooth. *Id*. at 463. The *Lind* court therefore found that there was no conflict between the VE's testimony, the ALJ's hypothetical and the DOT. *Id.* at 463-64.

As in *Lind*, the VE in the present case explained that the identified jobs were still within the ability of Krueger, even given the RFC of a moderate limitation on ability to interact with the public. (R. 258-59, 265). The VE explained that moderate limitation

> would not necessarily mean [Krueger] could not do basic work functions. And for the most part, the work as a cashier, receptionist, bailiff, she's not doing intense kinds of questioning, like interviewing, you know, these kinds of work functions are fairly straightforward in job descriptions.

(R. 265). Similar to the VE in *Lind*, the VE in the present case is articulating in this testimony that the identified jobs do not require "intense" public interaction, and therefore her testimony clarifies that the interaction is more superficial and within the abilities of Krueger. As was true in *Segovia*,

the VE's testimony in the present case clarifies how the DOT's broad categorizations apply to Krueger's RFC, and the Court declines to find a conflict with the DOT.

Given the Court's finding on Krueger's main contention, it declines to address an assertion by Krueger that the ALJ erred in finding the Krueger had transferable skills.  The VE identified jobs, both at Step 4 and at Step 5 that did not require transferable skills, and therefore any issue in this regard is moot.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  The decision is AFFIRMED.

DATED this 11th day of August, 2008.


_____
Paul J. Cleary
United States Magistrate Judge